VALIENTE & Co., Petitioner, *v.* DISTRICT COURT OF SAN JUAN and MANUEL ANZALOTA FUENTES, ET AL., represented by their father with *patria potestas,* Manuel Anzalota, and Tomás Anzalota Fuentes, Defendants.

No. 1119. Argued February 4, 1938.—Decided February 18, 1938.

E. *Martínez Rivera* for petitioner. *Dubón & Ochoteco* for defendants.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The controversy between the parties has been submitted to our consideration on two former occasions. In both instances our decision has been adverse to the pretensions of the plaintiff company which is the petitioner in this proceeding. See: *Valiente & Co.* v. *Heirs of Fuentes,* 45 P.R.R. 600, and 51 P.R.R. ———

We deem it convenient to make a summary of the facts:

Valiente & Co. brought suit against Aurelia, Elisa, María, Florentino, Aureliana, Carmela, Rosalía, Manuela and Francisca Fuentes and against Rosalía Suárez, components of the estate (succession) of Abdón Fuentes, to recover on two promissory notes executed by the deceased. Each and every one of the defendants was served with process. The defendants Aurelia and Rosalía Fuentes answered the complaint and alleged as a defense that on the date on which the obligations sued upon were contracted, their father, Abdón Fuentes, was insane and therefore had no capacity to contract them. The rest of the defendants did not appear and hence their default was entered. After a trial, the district court rendered judgment on December 31, 1929, against all of the defendants, who were duly notified thereof. Aurelia and

Rosalía Fuentes appealed, and this court, on July 29, 1933, reversed the judgment, upholding the defense as to the mental incapacity of Abdón Fuentes and holding that in so far as those two defendants are concerned, the plaintiff could not recover (45 P.R.R. 600). This judgment was affirmed by the Boston Circuit Court of Appeals, 76 F. (2d) 78.

The defendants in default, Elisa, María, Carmen, Manuela, and Francisca Fuentes and Rosalía Suárez also appealed to this court. The judgment was likewise reversed with regard to those defendants. (51 P.R.R.). The only defendant, therefore, who remained subject to responsibility under the judgment, should this be valid as to her, was Aureliana Fuentes, who died without having intervened in any manner in the prosecution of the suit in the lower court and without acting in any way to have the judgment reviewed.

The plaintiff company having obtained an order of execution and sold certain property belonging to the heirs of Aureliana Fuentes, the latter went to the district court with a petition for the annulment of the public sale, and praying that they be exonerated from the effects of said judgment. The plaintiff company acceded to the annulment of the sale, but opposed the prayer to set aside the judgment, on the ground that the trial court had no jurisdiction. The decision of the lower court, in so far as pertinent, reads as follows:

"Plaintiff alleges that this Court has no jurisdiction to set aside a final and unappealable judgment which was entered, with jurisdicdiction over the person and subject-matter, on December 31, 1929.

"The petitioners allege that even though the judgment was rendered on December 31, 1929, and no appeal was taken therefrom, there is no limitation to the time within which a petition to set aside the judgment may be filed, inasmuch as the judgment is an absolute nullity (nonexistent) and furthermore because they are entitled to the benefit of the decisions handed down by the Supreme Court, reversing that of the lower court, in the two appeals taken by the other defendants.

"In our opinion, the petitioners are right. The defense which was introduced by the defendants who appeared and answered strikes at the very root of the cause of action, and is of such a nature that it destroys the cause of action not only with regard to the appearing defendants but also with respect to those defendants whose default had been entered. The judgment rendered in a case like this is one and indivisible, and if when originally rendered it benefits defendants in default as well as those who have appeared, it is logical that the judgment rendered on appeal should equally benefit all defendants. Since only one judgment was rendered, when this was reversed as to some of the defendants it necessarily became reversed as to the others, whether they had appealed or not. It is precisely for this reason that judgment by default can not be entered until the evidence shows that the alleged cause of action exists. That is why in the note from 78 A.L.R. which is cited by our Supreme Court, it is affirmed that if the defense interposed by the defendants who appear is successful, 'it inures to the benefit of the defaulting defendants both in actions at law and suits in equity, with the result that final judgment must be entered not merely in favor of the answering defendant, but also in favor of the defaulting defendants.' In our opinion, there is no reason to justify the application of a different rule as to the effect of a judgment on appeal. Should the above rule not be applied and the judgment be upheld as to these petitioners, we would have the anomalous situation that the same Abdón Fuentes who is insane and incapacitated when one of his obligations is sought to be collected from some of his children, is sane and capacitated when the same obligation is sought to be collected from other of his children. It is evident that a court of justice can not sanction such a situation, and it would be a mere mockery of justice to uphold a judgment under those conditions.

"As in our opinion the judgment of December 31, 1929, is nonexistent with respect to all of the defendants as a result of its reversal by the Supreme Court on July 29, 1933, the public sale which was held of some of the property of Aureliana Fuentes is hereby set aside, and it is decreed that the judgment of December 31, 1929, rendered against the Succession of Abdón Fuentes, is void *ab initio* (nonexistent.)"

Valiente & Co. now comes to this court by means of this certiorari proceeding, alleging herein that the decision above

transcribed is erroneous, inasmuch as the court *a quo* had no jurisdiction to·render it, for the following reasons:

"(*a*) Because the judgment in question was entered and registered in the district court on December 31, 1929, and notified to the defendant Aureliana Fuentes on September 20, 1933, without an appeal having been taken therefrom within the 30-day period provided by law, for which reason said judgment became final, unappealable and subject to execution as to Aureliana Fuentes, from October 20, 1933.

"(*b*) Because on May 5, 1937, the judicial term within which said judgment had been entered and notified to the defendant Aureliana Fuentes, had already expired.

"(*c*) Because by failing to take any personal action in the case from September 20, 1933, that is, during a period of more than 23 months, and by failing to take any appeal against said judgment notwithstanding her knowledge of the same, the defendant Aureliana Fuentes accepted the effect of the judgment and waived any right, action or defense which she might have opposed thereto, and therefore her successors are now estopped and barred from evading its consequences."

 We have no doubt but that as soon as the judgment of the District Court of San Juan of December 31, 1929, was reversed and annulled by the judgments of this Supreme Court of July 29, 1933 and April 21, 1937, the lower court reacquired jurisdiction over the case to enforce execution of its judgment as to the defendant Aureliana Fuentes or her heirs or to relieve them from the effect of the judgment pursuant to the discretional power granted by Section·140 of the Code of Civil Procedure, if in its opinion said judgment had been annulled *in toto* by this higher court. That this is so is shown by the fact that the plaintiff had to resort to the lower court with a motion for an order to execute upon the judgment.

 The only question now presented to us is the following: Did the district court err in deciding that the judgment entered by it an reversed by the Supreme Court, on the ground that the obligations signed by Abdón Fuentes while insane were null and void, could not be enforced against the

successors of Aureliana Fuentes, in spite of the fact that said defendant did not answer, appear at the trial or establish any proceeding in defense of her rights?

The same reasons on which we founded our judgment. of April 21, 1937 (51 P.R.R. ____) compel us to decide that the lower court did not commit the error assigned. The plaintiff brought its suit against all the heirs of Abdón Fuentes jointly, demanding payment of liabilities, for which the heirs were responsible, if they should have been legally contracted and were legally enforceable. An essential requisite for the existence and validity of a contractual obligation is that the contracting parties should have freely given their consent. (Section 1213 of the Civil Code, 1930 ed.) Abdón Fuentes was unable to give that consent inasmuch as he was in a state of insanity on the date that he signed the promissory notes (Section 1215 of the Civil Code, 1930 ed.). For those reasons we held that the defendant Aurelia and Rosalía Fuentes, who raised the defense of their father's incapacity, could not be compelled to pay obligations contracted by their father while he was mentally unsound. For similar reasons we relieved the six defendants against whom judgment by default was rendered and who appealed to this Supreme Court, from the payment of those obligations. We extended to them the benefit of the defense of incapacity raised by the other two co-defendants, not because the above-mentioned six defendants were diligent in appealing, but because we were of the opinion that in joint and several obligations, as are the promissory notes involved in this obligation, the defense of the incapacity of the maker of the notes, raised and successfully maintained by two of his heirs, should benefit all of his heirs to the same degree, even those who failed to answer the complaint. As the trial judge so well expressed it, the defense of the mental incapacity of the maker of the notes strikes at the very root of the cause of action, and when satisfactorily established extinguishes the obligation as to all who might be called upon to pay it, should it be

valid. See: 78 A.L.R. 939 and Black on Judgments, Vol. I (2d ed.) p. 310.

■ This Supreme Court has the power to review and affirm, modify or reverse the judgments of the district courts, and is under the duty, when reversing a judgment, to render that which it believes should have been rendered by the lower court. (Section 306 of the Code of Civil Procedure, 1933 ed.) The judgment thus rendered by this court, when re turned to the lower court for enforcement and execution, takes the place of the reversed judgment and its effect relates back to the date upon which the lower court rendered its original decision. This being the law, when this Supreme Court decided that Abdón Fuentes was mentally unbalanced on the date that he contracted the obligations, the effect of that decision should be the same as if that judgment had been originally rendered by the district court on December 31, 1929. That effect can be no other than the annulment of the obligations as legally nonexistent by reason of the mental incapacity of their maker. And the benefit of that holding must be necessarily enjoyed equally by all of the defendants, including the heirs of Aureliana Fuentes, in default, because in order to uphold the exoneration of the defendants who appeared and require the payment of the obligations by those in default, we would be forced to maintain the absurdity that Abdón Fuentes was insane as to the former and sane as to the latter.

Hamlet's dilemma, to be or not to be, has already been decided against the petitioners. Abdón Fuentes was a mental defective who could not validly consent so as to give legal existence to an obligation. The heirs of Aureliana Fuentes are not bound by a judgment which in effect was annulled *in toto* by our judgment.

The petition should be dismissed and the writ of certiorari annulled.

Mr. Justice Córdova Dávila took no part in the decision of this case.